UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IMPERATIVE LOGISTICS LLC,**<br><br>        Plaintiff,<br><br>-against-<br><br>**OFFSITEK, LLC**,<br><br>        Defendant. | Case No.<br><br><br>**COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

      Plaintiff Imperative Logistics LLC ("Plaintiff" or "Imperative"), by and through its undersigned counsel, brings this action against Offsitek, LLC ("Offsitek" or "Defendant") for breach of contract. As set forth herein, Defendant has failed to pay fees duly owed to Imperative under a valid and enforceable contract. Plaintiff now seeks to recover these unpaid amounts, together with all other relief as the Court may deem just and equitable, to remedy the significant financial harm caused by Defendant's breach.

## NATURE OF THE ACTION

    1.    Imperative is a diversified supply chain management company that provides logistics solutions to its customers, handling sensitive, time-definite, and high-value shipments across a wide array of industries.

    2.    Offsitek is an offsite manufacturing company that offers end-to-end solutions for industrialized construction that integrates land development, advanced digital design, supply chain optimization, and construction services.

    3.    On July 5, 2024, the parties entered into a valid and enforceable contract, pursuant to which Imperative agreed to provide Offsitek with transportation and customs brokerage services (the "Agreement").

4.     Over several months, Imperative fully performed its obligations under the Agreement.  Complying with the terms of that Agreement, Imperative issued invoices to Offsitek, with each invoice due and payable within 30 days from the date of invoice.  Though Offsitek initially paid Imperative's invoices, those payments eventually stopped, and between November 2024 to February 2025, Offsitek failed to pay 18 invoices totaling $170,870.99.  Despite multiple attempts to collect payment, to date, Offsitek has failed to compensate Imperative for the work it has performed, in breach of Offsitek's obligations under the Agreement.  Accordingly, Imperative is left with no choice but to initiate this proceeding to secure the compensation to which it is lawfully entitled.

**PARTIES**

5.     Plaintiff Imperative Logistics LLC is a limited liability company incorporated in Delaware with its principal place of business in Illinois.  The sole member of Imperative Logistics LLC is Imperative Logistics Group LLC, a limited liability company incorporated in Delaware with its principal place of business in Oregon.  The sole member of Imperative Logistics Group LLC is Imperative Intermediate Holdings, LLC, a limited liability company incorporated in Delaware with its principal place of business in Oregon.  The sole member of Imperative Intermediate Holdings, LLC is Imperative Worldwide, LLC, a limited liability company incorporated in Delaware with its principal place of business in Oregon.  The sole member of Imperative Worldwide, LLC is LJ Imperative Holdings Inc, which is incorporated in Delaware with its principal place of business in Connecticut.  Accordingly, Imperative Logistics LLC is a citizen of Delaware and Connecticut for purposes of this Court's diversity jurisdiction. *See Assure Glob., LLC v. Anderson*, 763 F. Supp. 3d 476, 483 (S.D.N.Y. 2025) ("A limited liability corporation adopts the citizenship of its members."); *see G-Concept Ltd. v. A.H. Schreiber Co. Inc.*, 2015 WL 3767263, at *2 (S.D.N.Y. June 17, 2015) (finding an incorporated "Inc." entity's

citizenship is determined by its state of incorporation and by the state where it has its principal place of business under 28 U.S.C. § 1332(c) (1)).

6. Defendant is a limited liability company incorporated and doing business in North Carolina. Upon information and belief, the sole member of Offsitek, LLC is its manager, Richard Admani. Upon information and belief, Mr. Admani is a resident and citizen of North Carolina.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there is diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. The Court has personal jurisdiction over the Defendant because it consented to jurisdiction in this judicial district. Specifically, the Agreement includes a valid New York forum selection clause.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant is subject to personal jurisdiction in this judicial district.

## FACTUAL ALLEGATIONS

### The Agreement and Imperative's Performance

10. On July 5, 2024, the parties entered into the Agreement (attached hereto as **Exhibit A**), under which Imperative undertook to provide Offsitek with transportation and customs brokerage services. In exchange, Offsitek agreed to compensate Imperative for these services "in accordance with Imperative Logistics' normal payment terms" and pursuant to Imperative's Terms and Conditions of Service (attached hereto as **Exhibit B**). The Terms and Conditions provide that in any dispute involving monies owed to Imperative under the Agreement, Imperative "shall be entitled to all costs of collection, including its reasonable attorneys' fees and interest at 15% per

annum or the highest rate allowed by law, whichever is less, unless a lower amount is agreed to by [Imperative]." **Exhibit B** at 4.

11. Imperative has performed all its contractual obligations under the Agreement. Specifically, from July 31, 2024 to February 10, 2025, Imperative provided importation, storage, and delivery services to Offsitek under the terms of the Agreement.

12. Following each delivery, Imperative timely issued invoices to Offsitek that detailed the work performed and the amount owed as agreed upon by the parties. Initially, Offsitek timely paid Imperative's invoices. By making such payments, Offsitek further represented its consent to the Agreement. But beginning in November 2024 and continuing through February 2025, Offsitek's payments stopped completely. In total, Offsitek has failed to pay 18 invoices (attached hereto as **Exhibit C**), totaling $170,870.99. Each invoice states that Offsitek's failure to dispute any charges within 60 days of the date of the invoice shall constitute a waiver of any alleged discrepancy or dispute.

## Offsitek's Failure to Pay the Outstanding Invoices

13. To date, Offsitek has not paid any of the outstanding 18 invoices, despite Imperative's repeated attempts to collect payment.

14. Specifically, on March 20, 2025, an Imperative executive met with representatives for Defendant to discuss the unpaid invoices and to propose a good-faith solution to Offsitek's delayed payments. During that meeting, Offsitek reported that its delay in payment was due to the company having recently experienced certain cash flow issues. But Offsitek represented that it would prioritize payment on the outstanding invoices by the following week.

15. Despite that representation, Offsitek did not make payment on any of the outstanding invoices in the week following the March 20 meeting.

16. After several unsuccessful attempts to contact Defendant, on April 7, 2025, a representative of Imperative was finally able to speak with Offsitek's Chief Manufacturing Officer ("CMO") over the phone. During that call, the CMO advised that the company was undergoing a corporate restructuring. The CMO noted Offsitek's satisfaction with Imperative's services, acknowledged that Offsitek owed Imperative money for its services, and scheduled a follow-up call for April 16, 2025 to discuss a payment plan.

17. The same Imperative representative called Offsitek's CMO at the agreed-upon time on April 16, 2025, but was unable to get him on the phone, despite several attempts.

18. Imperative continued to reach out to Offsitek, finally connecting on April 24, 2025. During that call, the companies' representatives again discussed Imperative's outstanding invoices and a potential payment plan for bringing Offsitek's account current.

19. The following day, on April 25, 2025, Imperative emailed Offsitek a proposed payment plan, whereby Offsitek would make an initial payment of $25,000 to Imperative on April 30, 2025, followed by additional monthly payments of $15,000 until such time as the balance was paid in full.

20. Imperative received no response to its proposal for weeks.

21. On May 15, 2025, Offsitek finally provided a counteroffer, proposing an initial payment of $10,000, followed by monthly payments of $7,500 until the account was made current.

22. Imperative responded on May 20, 2025 with a revised proposal, agreeing to monthly payments of $7,500 but asking for an initial payment of $25,000 as a show of good faith by Offsitek. Imperative gave Offsitek until June 6, 2025 to come to an agreement before Imperative would pursue all its legal rights and remedies to collect its unpaid fees. To date, Imperative has not received a response to its May 20 proposal.

23. On June 6, 2025, Imperative sent a Demand Letter to Offsitek (attached hereto as **Exhibit D**), noting that Imperative had attempted to work with Offsitek in good faith to come to an agreed-upon payment plan, but that Offsitek had refused to agree to a plan or provide assurance that the past due amount would be paid in a timely matter. The Demand Letter stated that Imperative would commence litigation if payment was not made in full by June 13, 2025, and made clear Imperative's intent to seek reimbursement of all costs and legal fees incurred, consistent with the Terms and Conditions of the Agreement.

## CAUSE OF ACTION

### COUNT I
### Breach of Contract

24. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

25. The Agreement between Plaintiff and Defendant is a binding and enforceable contract executed on July 5, 2024.

26. Under the Agreement, Plaintiff undertook to provide Offsitek with transportation and customs brokerage services in exchange for Offsitek's agreement to compensate Imperative for any services provided "in accordance with Imperative Logistics' normal payment terms" and pursuant to Imperative's Terms and Conditions of Service.

27. Plaintiff has complied with all its obligations under the Agreement.

28. In breach of the express terms of the Agreement, Defendant has failed to uphold its end of the bargain and pay Plaintiff for the services it has rendered under the Agreement, despite Plaintiff's repeated requests for Defendant to fulfill its payment obligations.

29. Defendant is thus in breach of its obligations under the Agreement.

30. Plaintiff is entitled to damages caused by Defendant's breach.

**PRAYER FOR RELIEF**

A. For an award of damages of $170, 870.99 arising from Defendant's breach of the Agreement;

B. For pre-judgment and post-judgment interest at the highest rates allowed by law;

C. For Plaintiff's reasonable attorneys' fees;

D. For all costs of suit; and

E. For such other and further relief as the Court may deem just and equitable.

**PRAYER FOR RELIEF**

Imperative respectfully demands a trial by jury on all claims triable by a jury under Federal Rule of Civil Procedure 38.

Dated: July 1, 2025                          **PERKINS COIE LLP**

By: */s/ Rachel Mechanic*
    Rachel Mechanic
    Samuel Gelb
    1155 Avenue of the Americas, 22nd Floor
    New York, NY 10036-2711
    Tel:   (212) 262-6900
    rmechanic@perkinscoie.com
    sgelb@perkinscoie.com

    Megan K. Houlihan (*pro hac vice* forthcoming)
    1120 NW Couch Street. 10th Floor
    Portland, OR 97209-4128
    Tel: (503) 727-2000
    mhoulihan@perkinscoie.com

    *Attorneys for Plaintiff*
    *Imperative Logistics LLC*